CRAIG H. MISSAKIAN (CABN 125202)
United States Attorney

MARTHA BOERSCH (CABN 126569)
Chief, Criminal Division

ELI J. COHEN (NYBN 5539226)
Special Assistant United States Attorney

    450 Golden Gate Avenue, Box 36055
    San Francisco, California 94102-3495
    Telephone: (415) 436-7443
    FAX: (415) 436-7234
    Eli.Cohen@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>    v.<br><br>FERNANDO JOSE CASTRO-TORRES,<br><br>    Defendant. | Nos. 3:24-CR-00580 CRB<br><br>**UNITED STATES' SENTENCING MEMORANDUM**<br><br>Court:    Hon. Charles R. Breyer<br>Hearing Date:    September 10, 2025<br>Hearing Time:    10:00 a.m. |

**I.    INTRODUCTION**

Defendant Fernando Jose Castro-Torres ("Castro-Torres" or the "defendant"), though young, already has a demonstrated history of dealing drugs, assaulting a police officer, and illegally possessing firearms and ammunition. For the reasons explained below, considering the factors set forth in 18 U.S.C. § 3553(a), the government respectfully recommends that the Court sentence Castro-Torres to: (i) a term of imprisonment of 24 months; (ii) a three-year term of Supervised Release with a special search condition; (iii) a special assessment of $200; and (iv) forfeiture.

**II.    FACTUAL AND PROCEDURAL BACKGROUND**

    **A. Criminal History and the Instant Offenses**

***Prior Criminal History.*** In under three years preceding the instant offenses, Castro-Torres, a

Honduran national in the United States without legal status, committed a series of serious crimes with little consequence. *See* Presentence Investigation Report ("PSR") ¶¶ 30-36.  In December 2021, he was arrested for selling cocaine base to a police officer and had suspected methamphetamine, fentanyl, prescription pills, and additional cocaine base in his possession. *Id.* ¶ 35.  He received pretrial diversion in July 2022. *Id.*  In December 2022, San Francisco Police Department ("SFPD") officers observed him driving a car registered to a person with an active felony arrest warrant, engaging in what appeared to be drug dealing activity in the Tenderloin neighborhood of San Francisco. *Id.* ¶ 30.  When two officers attempted to stop the car, while one loudly identified the pair as police, Castro-Torres accelerated the car and struck one of officers. *Id.*  The officer was pulled onto the hood of the car before being thrown to the pavement, sustaining bruising and scraping injuries to his elbow, side, and knee, and ultimately going to the hospital. *Id.*  Castro-Torres attempted to drive away before crashing into a bystander's car, then fled on foot before being apprehended. *Id.*  Once police caught him, Castro-Torres resisted arrest. *Id.* Police found approximately 21 grams of suspected fentanyl, money, and a digital scale on Castro-Torres's person, and various further drugs, drug packaging material, and cell phones in the car. *Id.*  For this conduct, Castro-Torres pleaded guilty to Assault with Force: Possible Great Bodily Injury under Cal. Penal Code ("PC") § 245(a)(4) and received a sentence of just 154 days jail and two years probation in May 2023. *Id.*

   Less than three months later, in August 2023, Castro-Torres arrived at a hospital in Oakland with his girlfriend, who had been shot in the back. PSR ¶ 31.  A security officer found two empty firearm magazines on his person and alerted Alameda County Sheriff's Office ("ACSO") deputies, who searched his vehicle. *Id.*  In Castro-Torres's car, ACSO deputies found a semiautomatic pistol, suspected narcotics, a scale, ski masks, five cell phones, a BB rifle, and thousands of dollars in cash. *Id.*  For this conduct, Castro-Torres pleaded guilty to Accessory under PC § 32 and received a sentence of just 14 days jail and two years probation. *Id.*  His probation for the December 2022 incident had been revoked shortly after his arrest, *Id.* ¶ 30, and he was taken into custody before reporting to Alameda County probation. *Id.* ¶ 31.  San Francisco County sent him to a treatment program, and within a week he cut off his GPS monitor and absconded. *Id.*  His Alameda County probation was subsequently revoked and later reinstated in August 2024. *Id.*  Additionally, he was arrested on methamphetamine dealing-related

charges in Portland, Oregon in April 2024, for which a bench warrant was issued in June 2024 and remains outstanding. *Id.* ¶ 37. Less than a month after the Oakland incident, Castro-Torres was arrested for leading California Highway Patrol on a chase through traffic near San Leandro in a stolen car before fleeing on foot; no charges were ultimately filed. *Id.* ¶ 36. About three weeks later, he committed the instant offenses.

      ***The Instant Offenses.*** On October 16, 2024, an undercover SFPD officer ("UC") was walking on Market Street in downtown San Francisco when he saw Castro-Torres sitting by the Orpheum Theater. PSR ¶ 7. Castro-Torres called out the UC and asked what the UC was looking for, and the two negotiated the sale of $40 worth of fentanyl. *Id.* The UC gave Castro-Torres $40, and Castro-Torres gave the UC a substance that he represented as fentanyl, but did not in fact contain the drug. *Id.* Officers and agents arrested Castro-Torres and searched him. *Id.* ¶ 8. They recovered a bag containing approximately 94 pills, some of which contained fentanyl and some of which contained the fentanyl analogue p-Fluorofentanyl, as well as a bag containing 16.8 grams of powder that contained fentanyl. *Id.* Law enforcement also recovered a cross-body bag from around Castro-Torres's torso that contained a privately-manufactured semiautomatic nine-millimeter caliber pistol loaded with nine rounds, and $111, two Android cell phones, and an iPhone from his person. *Id.* ¶ 9.

      **B. Procedural Background**

      Law enforcement arrested Castro-Torres on scene, and he was charged by Criminal Complaint the following day. On November 19, 2024, a grand jury in the Northern District of California returned a two-count indictment charging him with Possession with Intent to Distribute Fentanyl, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(C), and Felon in Possession of Ammunition, in violation of 18 U.S.C. § 922(g)(1). On June 20, 2025, Castro-Torres pleaded guilty to both counts of the indictment pursuant to a plea agreement under Federal Rule of Criminal Procedure 11(c)(1)(A) and 11(c)(1)(B) (the "Agreement"). In the Agreement, for Count One, the parties agreed on a base offense level of 16 under United States Sentencing Guidelines ("U.S.S.G.") § 2D1.1(c)(12) and on the application of a two-level (+2) increase for the specific offense characteristic of a firearm being possessed in connection with the offense under U.S.S.G. § 2D1.1(b)(2), for an Adjusted Offense Level of 18. For Count Two, the parties agreed on a base offense level of 14 under U.S.S.G. § 2K2.1(a)(6)(A), on a four-level (+4) increase for

the specific offense characteristic of the defendant knowing, being willfully blind to, or consciously avoiding knowledge of a firearm involved in the offense not being marked with a serial number under U.S.S.G. § 2K2.1(b)(4)(B)(i)[1], and a four-level (+4) increase for the specific offense characteristic of the ammunition being possessed in connection with another felony under U.S.S.G. § 2K2.1(b)(6)(B), for an Adjusted Offense Level of 22. The parties agreed that Counts One and Two formed one group of closely related counts under U.S.S.G. § 3D1.2(c), that the total units of 1 did not increase the offense level of the highest group[2], and on a three-level (-3) decrease for acceptance of responsibility under U.S.S.G. § 3E1.1, for a Total Adjusted Offense Level of 19. The parties have reached no agreement regarding Castro-Torres's Criminal History Category. The United States agreed to recommend a sentence no higher than the low end of the Guidelines range associated with a Total Adjusted Offense Level of 16, provided Castro-Torres did not violate the Agreement or fail to accept responsibility. The parties further agreed on a special search condition as part of Supervised Release.

### III. GUIDELINES CALCULATIONS AND SENTENCING RECOMMENDATION

#### A. The PSR's Total Offense Level Calculations

U.S. Probation's total offense level calculations in the PSR are set forth below:

Count Group 1

Counts One and Two are grouped for guideline calculation purposes because one of the counts embodies conduct that is treated as a specific offense characteristic in, or other adjustment to, the guideline applicable to another of the counts. U.S.S.G. § 3D1.2(d); PSR ¶ 16.

    a. Base Offense Level, U.S.S.G. § 2K2.1(a)(4)(A)      20
    b. Specific Offense Characteristics Under U.S.S.G. Ch. 2
         U.S.S.G. § 2K2.1(b)(4)(B)(ii) – knew firearm had no serial number    + 4
         U.S.S.G. § 2K2.1(b)(6)(B) – possessed in connection with another felony    + 4
    c. Acceptance of Responsibility – U.S.S.G. § 3E1.1    -3
    d. Total Offense Level    25

In the PSR, Probation points out that *United States v. Gomez*, 115 F.4th 987 (9th Cir. 2024),

---

[1] Though the Agreement denotes that this enhancement is provided in subsection (b)(4)(B)(i), it should read "(b)(4)(B)(ii)".
[2] The government acknowledges that a multiple-count adjustment – though in this case it did not result in an offense level increase – is inappropriate here because there is only one group of closely related counts.

UNITED STATES' SENTENCING MEMO      4
3:24-CR-00580 CRB

which held that Assault with a Deadly Weapon under Cal. Penal Code § 245(a)(1) is not a categorical "crime of violence" under the Sentencing Guidelines, was vacated pending rehearing *en banc*. PSR ¶ 3. Probation therefore concludes that this means Castro-Torres's § 245(a)(4) conviction should be considered a crime of violence, and his base offense level is 20. *Id*.

The government is abiding by the Guidelines calculations as set forth in the Agreement. The parties agreed that the proper base offense level for Count Two was 14, and the government is holding to that. The government does agree with Probation that Castro-Torres's Criminal History Category ("CHC") is II, *see* PSR ¶ 34, and on its application of the above-noted sentencing enhancements. A Total Adjusted Offense Level 19 at CHC II yields a Guidelines range of 33 to 41 months. However, in the Agreement the government promised to recommend a sentence no higher than the low end of the Guidelines range associated with a Total Adjusted Offense Level of 16. A Total Adjusted Offense Level 16 at CHC II yields a Guidelines range of 24-30 months. Thus the government's 24-month recommendation.

### a. The Government Agrees with Probation's Application of the Sentencing Enhancement Under § 2K2.1(b)(4)(B)(ii)

The government agrees with Probation's conclusion that the four-point sentencing enhancement under U.S.S.G. § 2K2.1(b)(4)(B)(ii) applies to this case. This Guidelines section states that it shall apply "[i]f . . . the defendant knew that any firearm involved in the offense was not otherwise marked with a serial number[.]" The Ninth Circuit has held that district courts should apply a preponderance of the evidence standard when evaluating the application of sentencing enhancements. *United States v. Lucas*, 101 F.4th 1158, 1162 (9th Cir. 2024) (*en banc*). "[T]he preponderance of the evidence standard is sufficient to satisfy due process for fact-finding under the advisory Guidelines, even when a fact has an extremely disproportionate effect on the sentence." *Id.* That standard is clearly satisfied here, where SFPD recovered a privately-manufactured firearm ("PMF") with no serial number from a bag slung around Castro-Torres's body at the time of his arrest. There is a preponderance of the evidence that he knew, was willfully blind to, or consciously avoided knowledge of the fact that the PMF bore no serial number, and the defendant agreed that this enhancement applies.

### b. The Government Agrees with Probation's Application of the Sentencing Enhancement Under § 2K2.1(b)(6)(B)

The government further agrees with Probation's conclusion that the four-point sentencing enhancement under U.S.S.G. § 2K2.1(b)(6)(B) applies to this case. This Guidelines section states that it shall apply "[i]f the defendant . . . used or possessed any firearm or ammunition in connection with another felony offense[.]" The preponderance standard is clearly satisfied in that Castro-Torres possessed both the PMF and ammunition while committing the felony drug offense in Count One.

## B. SENTENCING RECOMMENDATION

### a. Legal Standard

The United States Sentencing Guidelines serve as "the starting point and the initial benchmark" of any sentencing process and are to be kept in mind throughout the process. *See United States v. Carty*, 520 F.3d 984, 991 (9th Cir. 2008); *see also United States v. Kimbrough*, 522 U.S. 85, 108 (2007). The overarching goal of sentencing, as set forth by Congress, is for the Court to "impose a sentence sufficient, but not greater than necessary." *Carty*, 520 F.3d at 991 (citation omitted). In accomplishing that goal, the Court should consider the factors set forth under 18 U.S.C. § 3553(a), which include:

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;

(2) the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(3) the need for the sentence imposed to afford adequate deterrence to criminal conduct; and

(4) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct.

### b. United States Probation's Recommendation

Probation has recommended that the Court sentence Castro-Torres to: (i) a term of imprisonment of 24 months; (ii) a Supervised Release term of three years with a special search condition; (iii) a special assessment of $200; and (iv) forfeiture of $111 in U.S. currency, one Android cell phone marked with a T-Mobile logo, one Android cell phone marked with a Motorola logo, one Apple iPhone, a privately-manufactured firearm, a firearm magazine, and all ammunition seized from the defendant on or about October 16, 2024, including nine rounds of nine-millimeter Luger ammunition, eight marked Ammo

Inc. and one marked FC. PSR at ¶¶ 24-26.

### c. United States' Recommendation

The government respectfully recommends that the Court sentence Castro-Torres to: (i) a term of imprisonment of 24 months; (ii) a Supervised Release term of three years with a special search condition; (iii) a special assessment of $200; and (iv) forfeiture of $111 in U.S. currency, one Android cell phone marked with a T-Mobile logo, one Android cell phone marked with a Motorola logo, one Apple iPhone, a privately-manufactured firearm, a firearm magazine, and all ammunition seized from the defendant on or about October 16, 2024, including nine rounds of nine-millimeter Luger ammunition, eight marked Ammo Inc. and one marked FC, as such a sentence appropriately balances the § 3553(a) factors.

### i. Nature and Circumstances of the Offense and The History and Characteristics of the Defendant; the Need for the Sentence to Reflect the Seriousness of the Offense, Promote Respect for the Law, and Provide Just Punishment

Castro-Torres's conduct in this case is very serious, as is his criminal history. Years after entering the United States illegally, and after a sustained period of committing similar crimes, he was caught in possession of two different forms of deadly fentanyl that he intended to sell, as well as a loaded handgun. His history and characteristics also support the government's recommended sentence. The defendant is a 21-year-old man from Honduras with no legal status in the United States. Over the course of approximately three years, he engaged in a near non-stop cycle of criminal activity. He was arrested in San Francisco for drug dealing in December 2021 and received pretrial diversion in July 2022. Five months later, he struck and injured a police officer with a car while fleeing from a drug enforcement stop, and was released after serving just five months in jail. Less than three months after that, he was caught with empty firearm magazines, as well as a gun and various drugs and drug paraphernalia in his car, when he brought his girlfriend to the hospital after she had been shot. He was arrested for drug dealing in Oregon in April 2024, led police on a high-speed chase in a stolen car in September 2024, and was arrested for the instant case in October 2024. He has absconded from treatment and had his probation revoked multiple times. He is clearly deserving of a substantial prison sentence. The government's recommended sentence would communicate the seriousness of Castro-

Torres's crimes in this case, account for his criminal history, and provide just punishment.

That said, the government is willing to credit the defendant's representations regarding the dangerous circumstances of his upbringing, *see* PSR ¶¶ 41-45, acknowledges his relatively young age, recognizes that a 24 months would be the longest sentence he has yet served, and credits his prompt acceptance of responsibility. It is for those reasons that the government promised to recommend a sentence commensurate with an offense level below its Guidelines calculations, a promise it is now keeping.

### ii. The Need for the Sentence Imposed to Afford Adequate Deterrence to Criminal Conduct

The government's recommended sentence serves not only as specific deterrence to Castro-Torres, but also general deterrence to others. Diversion, probation, treatment, and prior five-month and 14-day county jail sentences clearly did little to deter him from continuing his armed drug dealing activities. A more significant sentence is necessary to deter him from continuing his criminal conduct. Such a sentence would also serve as general deterrence to others by communicating that purveying deadly drugs while armed with a handgun will be punished appropriately.

## IV. CONCLUSION

For the foregoing reasons, the government respectfully recommends that the Court sentence Castro-Torres to: (i) a term of imprisonment of 24 months; (ii) a Supervised Release term of three years with a special search condition; (iii) a special assessment of $200; and (iv) forfeiture of $111 in U.S. currency, one Android cell phone marked with a T-Mobile logo, one Android cell phone marked with a Motorola logo, one Apple iPhone, a privately-manufactured firearm, a firearm magazine, and all ammunition seized from the defendant on or about October 16, 2024, including nine rounds of nine-millimeter Luger ammunition, eight marked Ammo Inc. and one marked FC.

DATED: September 3, 2025                                Respectfully submitted,

                                                        CRAIG H. MISSAKIAN
                                                        United States Attorney
                                                          */s/ Eli J. Cohen*
                                                        ELI J. COHEN
                                                        Special Assistant United States Attorney